**Slip Op. 99 - 62**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, JUDGE**

| | |
|---|---|
| HEVEAFIL SDN. BHD., and FILMAX SDN. BHD., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Court No. 97-04-00659 |

[Plaintiff's motion for judgment upon an agency record pursuant to USCIT R. 56.1 is denied. Judgment entered for defendant.]

Dated: July 14, 1999

White & Case (Walter J. Spak and David E. Bond) for plaintiffs Heveafil Sdn. Bhd., and Filmax Sdn. Bhd.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau); Office of the Chief Counsel for Import Administration, United States Department of Commerce (Myles S. Getlan), of counsel, for defendant.

## OPINION

**GOLDBERG, Judge:** Plaintiff Heveafil Sdn. Bhd. ("Heveafil") contests liquidation instructions issued by the U.S. Department of Commerce ("Commerce") following an administrative review of extruded rubber thread from Malaysia.[1]  See Extruded Rubber Thread from Malaysia: Final Results of Antidumping Administrative Review, 61 Fed. Reg. 54,767 (Oct. 22, 1996) ("Final Results"). Plaintiff challenges Commerce's instructions under USCIT R. 56.1, having filed a motion for judgment upon an agency record for an action other than that described in 28 U.S.C. § 1581(c).

Plaintiff maintains the antidumping ("AD") statute requires Commerce to cap antidumping duties on entries made during the bonding period for purposes of calculating the assessment rate. Because Commerce failed to calculate the assessment rate in this manner, plaintiff claims Commerce's liquidation instructions were in error.  Plaintiff requests a remand to Commerce with instructions to recalculate the assessment rate.  The Court sustains Commerce's liquidation instructions.

---

[1] Because plaintiff Filmax Sdn. Bhd. lacked standing, the Court dismissed its case.  See Heveafil Sdn. Bhd. v. United States, No. 97-04-00659, slip op. 98-115 (CIT Aug. 28, 1998).

# I.

## BACKGROUND

This cases revolves around a provision of the antidumping statute that limits collection of duties on subject merchandise entered between the preliminary determination in the original investigation and the International Trade Commission's ("ITC") final affirmative determination, a period commonly referred to as the "bonding period."  Specifically, 19 U.S.C. § 1673f(a) provides as follows:

> **§ 1673f. Treatment of difference between deposit of estimated antidumping duty and final assessed duty under antidumping duty order**
>
> **(a)  Deposit of estimated antidumping duty under section 1673b(d)(2) of this title**
>
> If the amount of a cash deposit collected as security for an estimated antidumping duty under section 1673b(d)(2) of this title is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption before notice of the affirmative determination of the Commission under section 1673d(b) of this title is published shall be -
>
> (1) disregarded, to the extent the cash deposit collected is lower than the duty under the order, or
>
> (2) refunded, to the extent the cash deposit is higher than the duty under the order.

19 U.S.C. § 1673f(a).[2]

Prior to the underlying administrative review, Commerce issued its preliminary findings in the original investigation on April 2, 1992 and soon thereafter instructed the United States Customs Service ("Customs") to collect provisional AD duties on Heveafil's entries at a rate of 2.62%.  See Extruded Rubber Thread from Malaysia: Preliminary Determination of Sales at LTFV, 57 Fed. Reg. 11,287 (Apr. 2, 1992).  In the final determination, Commerce assigned Heveafil a dumping rate of 10.68%, see Extruded Rubber Thread from Malaysia: Final Determination of Sales at LTFV, 57 Fed. Reg. 38,465 (Aug. 25, 1992), and on October 14, 1992, the ITC issued a final affirmative injury determination. Consequently, the bonding period in this case ran from April 2, 1992 to October 14, 1992 -- the time frame between the preliminary determination and the issuance of the ITC decision.

The underlying administrative review, which Commerce initiated on December 17, 1993, was Commerce's first review of the outstanding order on extruded rubber thread from Malaysia.

---

[2] Commerce initiated the underlying review before December 31, 1994.  Consequently, the applicable statutory provisions are those that existed on December 31, 1994, i.e., the law in effect prior to the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 ("URAA").  See Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

Importantly, this review covered entries made between April 2, 1992 and September 30, 1993 -- that is, entries made both during and after the bonding period. See Initiation of AD and CVD Administrative Reviews, 58 Fed. Reg. 65,964 (Dec. 17, 1993). In October, 1996, Commerce issued its Final Results and assigned Heveafil a dumping rate of 10.65%. See Final Results, 61 Fed. Reg. at 54,773. Commerce did not issue the liquidation instructions as part of the Final Results, however. Instead, Commerce issued draft instructions in January, 1997 and then, on April 4, 1997, instructed Customs to assess AD duties at a rate of 9.85% for Heveafil's entries during the first review period. See Mem. from P. Schwartz, AD/CVD Enforcement ITA/DOC to Customs (Apr. 2, 1996), Pub. Doc. No. 16. For the reasons discussed below, Heveafil claims Commerce's liquidation instructions were unlawful.

## II.
### JURISDICTION

As a preliminary matter, there is a jurisdictional question. Plaintiff and Commerce each assert that jurisdiction is established under 28 U.S.C. § 1581(i), the court's residual jurisdiction provision. See Pl.'s Br. in Supp. of Mot. for J. on

Agency R. ("Pl.'s Br.") at 3; Def.'s Br. in Opp'n to Mot. for J. on Agency R. at 4.  The Court agrees.  It is incumbent upon the Court to independently assess the jurisdictional basis for a case, see Ad Hoc Committee of Fla. Producers of Gray Portland Cement v. United States, 22 CIT __, __, 25 F. Supp.2d 352, 357 (1998), a principal that is especially true where a party seeks to invoke the court's residual jurisdiction authority.  And, "[i]t is well established that the residual jurisdiction of the court under section 1581(i) may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the relief provided under that other subsection would be manifestly inadequate."  Id. (internal quotations omitted) (citing Norcal/Crosetti Foods, Inc. v. United States, 10 Fed. Cir. (T) 61, 64, 963 F.2d 356, 359 (1992)).

Here, it is appropriate to exercise residual jurisdiction authority because jurisdiction under another subsection of section 1581 is not available.  Commerce's instructions are not subject to review under section 1581(a) because Commerce, not Customs, is the agency responsible for issuing the instructions and determining the amount of antidumping duty to be assessed.  Commerce's liquidation instructions also are not reviewable under

section 1581(c) because they were not part of the <u>Final Results</u>.
Rather, the instructions were issued nearly five months after the
<u>Final Results</u> were published, thereby making it impossible for
Heveafil to contest the instructions within thirty days of the
<u>Final Results</u> as required under 19 U.S.C. § 1516a(a)(2)(B)(iii).
And finally, none of the other subsections in section 1581 (a)
through (h) provides a basis for jurisdiction.  Accordingly, the
issue of antidumping law presented in this case is appropriate
for review under section 1581(i).

### III.
### <u>STANDARD OF REVIEW</u>

Section 2640(e), Title 28, United States Code, provides that
"[i]n any civil action not specified in this section, the Court
of International Trade shall review the matter as provided in
section 706 of title 5."  28 U.S.C. § 2640(e) (1994).  Section
2640 does not address civil actions filed under 28 U.S.C. §
1581(i).  Accordingly, the Court reviews Commerce's liquidation
instructions as provided in section 706 of title 5 and will find
them unlawful if they are "arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law." 5 U.S.C. §
706(2)(A) (1994).

## IV.
### DISCUSSION

Plaintiff contends that, for purposes of calculating the assessment rate, Commerce failed to disregard the excess antidumping duties on entries made during the bonding period as required by section 1673f(a)(1).  Specifically, plaintiff states that "[i]n calculating the dumping margin for each sale, and ultimately Heveafil's total antidumping duty liability for the period of review, Commerce included entries during the bonding period, but did not cap Heveafil's liability for those entries. Thus, the total amount of antidumping duties for entries during the bonding period was included in the calculation of the assessment rate."  Pl.'s Br. at 6-7.  Because section 1673f(a)(1) limits the amount of duties that can be collected, Heveafil argues that the excess duties must also be disregarded for purposes of calculating the assessment rate.  Therefore, Heveafil maintains that Commerce should have calculated two assessment rates here: one for the bonding period, in which excess duties are not included, and a separate one for the period after the bonding period that also does not include excess liability from the bonding period.  See Pl.'s Br. at 15.

Instead, Commerce calculated a single assessment rate, dividing the dumping margin found on sales of all subject merchandise, both during and after the bonding period, by the entered value of the merchandise.  In doing so, Commerce did not cap Heveafil's liability on entries made during the bonding period.  As a result, plaintiff claims the excess dumping liability from bonding period entries that should have been disregarded has been shifted to the liability on entries made after the bonding period.  Plaintiff thus maintains the liquidation instructions constitute an abuse of discretion and are not in accordance with law.

Heveafil also notes that, at the administrative level, Commerce never claimed that the company's proposed assessment rate was contrary to the statute.  <u>See</u> Mem. from the Team to Louis Apple Re: Calculation of Assessment Rates in the First Review of Extruded Rubber Thread from Malaysia (Mar. 28, 1997) ("Apple Mem."), Pub. Doc. No. 15.  Rather, Commerce rejected Heveafil's methodology in favor of a single assessment rate because Heveafil's sales listing did not contain entry dates for most sales and, hence, it was unable to determine "which sales fell within the bonding period and which did not."  <u>Id.</u> at 3-4.

Heveafil responds that Commerce's decision in this respect is not supported by substantial evidence.

Plaintiff is wrong.  As recently addressed in <u>Thai Pineapple Canning Industry v. United States</u>, No. 98-03-00487 (CIT May 5, 1999), section 1673f(a) simply provides a "limitation on collection."  <u>Id.</u>, No. 98-03-00487, slip op. 99-41 at 28.  The statute does not suggest that the limitation on collection also impacts the method used to compute an assessment rate.  Indeed, the basis for calculating dumping margins and assessment rates is provided for elsewhere in the antidumping code.  <u>See</u> <u>id.</u> (citing 19 U.S.C. § 1675(a)(2), which provides that Commerce shall determine the foreign market value and U.S. price of <u>each</u> entry, as well as the dumping margin for <u>each</u> entry).  While <u>Thai Pineapple</u> involved a post-URAA administrative review, the substantive law at issue here was not changed by the Uruguay Round amendments.  <u>Compare</u> 19 U.S.C. §§ 1673f(a) and 1675(a)(2) (1988), <u>with</u> 19 U.S.C. §§ 1673f(a) and 1675(a)(2) (1994).  The Court finds the reasoning in <u>Thai Pineapple</u> on point and correct with respect to this issue.  Commerce's decision to use a single assessment rate is plainly supported by the statute.  In addition, given the statute's support for Commerce's liquidation

instructions, plaintiff's substantial evidence argument is mooted.

Finally, while Commerce agrees with this analysis, it nevertheless requests a remand to articulate this view at the administrative level.  As noted earlier, Commerce neglected to address the statutory basis for its action when it issued the liquidation instructions.  Apple Mem. at 3-4.  Commerce thus prays for a remand because it claims there is an issue of statutory interpretation that must first be addressed by the agency.

A remand is not necessary here.  This is not a situation that implicates agency discretion in the often complex and subtle interplay between statutory standards and particular facts that arise in the antidumping arena.  Rather, as <u>Thai Pineapple</u> has made clear, section 1675(a)(2) requires Commerce to calculate a dumping margin for each entry.  And, nothing in section 1673f(a) indicates that Congress intended the cap on collection to impact the independent calculation of the dumping margin and assessment rate mandated in section 1675(a)(2).  Therefore, because the statute's plain language guides the outcome of this case, a remand is not appropriate.  <u>See</u> <u>Koyo Seiko Co., Ltd. v. United</u>

<u>States</u>, __ Fed. Cir. (T) __, __, 95 F.3d 1094, 1101 (1996)

(finding that a remand was inappropriate where the sole issue was

one of statutory construction).

## V.
## <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that Commerce's

liquidation instructions were in accordance with law.  A separate

Judgment Order will be entered accordingly.

_____

Richard W. Goldberg
JUDGE

Date:     July 14, 1999
          New York, New York.